I'm sorry for the flood. I've been there. It's like that Southwest commercial. You want to get away? Next case is numbers 06-5008 and 5009, In Re Lucent, Death Benefits, ERISA Litigation. And we have Mr. Malone, Ms. Quesada, and Mr. Pope. Good morning, Your Honor, and may it please the Court. Hang on. Let's let everybody just get together. Just hold on for one sec. Oh, that's – you set a record for the quickest I've ever seen. Hopefully we can get out of here just as quickly when our time is up and the next case is called. May it please the Court, my name is James Malone, and I speak on behalf of the Foss plaintiffs. Ms. Quesada and I have a request we would like the Court's indulgence on. We would request that we be permitted to divide our rebuttal time so that I would take two minutes and she would take two minutes. That's fine. Thank you very much, Your Honor. The District Court erred in dismissing this action because the allegations that the plaintiffs made and the supporting documents that they submitted demonstrated that the pensioner death benefit at issue here has designed and treated as a defined pension benefit for nearly 40 years. It provided retirement income. It was described in the plan language, in mandatory language. The plan said it shall be paid. The summary plan descriptions issued by AT&T said it will be paid. Now, the plan language said that the plan administrator may grant a pensioner death benefit in its discretion. Now, it did, but it sounds like in its discretion means it also could take it away provided that the person had not, I guess, died. I don't think, respectfully, Your Honor, that that's a fair reading of the plan language. This plan had two different kinds of death benefits. There were discretionary beneficiaries who were not in this case, and there were mandatory beneficiaries. So first it says in its discretion, but then the language continues and it indicates in substance that if there is a mandatory beneficiary or a beneficiary having the following relationship, then the benefit shall be paid as followed. And that's the benefits that we have at issue here. And it's interesting how that fits within the structure of the plan because when the benefits were discretionary, they paid them wholly outside of the pension trust. When they were paid to a mandatory beneficiary, the issue that before the court, they were paid from the corpus of the trust. Well, Article 10.1 does say that the board of directors or its delegate may from time to time make changes in the plan as set forth in this document or terminate said plan. But such changes shall not affect the rights of any employee to any benefit to which he or she may have previously become entitled here under. But to become entitled to a death benefit, you have to die, don't you? I don't think so under this plan. That does not appear to be the intent of this plan. And I think one thing I would ask you to think about is this. And the reason for that would be the termination provisions, Your Honor. The termination provisions of this plan set forth and indicated that if the plan terminated, death benefits would be paid post-termination, not just for those who had already died, which would be what you would assume if the entitlement arose upon death, but also for those who were on the pension roll at the time receiving service pensions and for those who were still employed who were eligible to retire with service pensions. That, to me, suggests that the entitlement arose not upon death, but at the time that you rendered the service to the employee or as an employee, which then triggered your eligibility for a service pension and for this related benefit. And there's support for this if you look at some of the language that they use to describe the plan. For example, AT&T in its summary plan description, which is Plan 16, goes through the criteria, and then it talks about former employees. And it says, Former employees, even if eligible for deferred vested benefits, are not eligible for sickness death benefits. Similarly, Lucent, in its summary plan description, says if you are a former employee, you are not eligible, not your beneficiaries. You are not eligible. The 1985 Actuarial Report prepared by AT&T. So just refresh. Where in the plan or the summary of the plan is there clear vesting language? I would submit that the best record on the clear vesting language starts with the termination provision and the fact that it's tied. This is a benefit that's joined at the hip with the service pension. If you are not service pension eligible, you will not get this benefit post-retirement. If you are, you will. But what is the exact language that you're relying on? Not your characterization of it, but what do the words actually say? The termination provision, Your Honor, says that if the plan terminates, then benefits will be paid. I'll find the precise language for you. To make provision for the payment of death benefits attributable to deaths occurring prior to the date of termination, you would expect that if death is the qualifying event, which would have been payable from the pension fund, and for the payment upon the deaths of retired employees who are on the pension roll as of the date of termination and of employees eligible as of that date for retirement of death benefits, which would have been payable from the pension fund had the plan not been so terminated, so that if eligibility is tied to death, you would not include those two categories of employees, current employees who are eligible to retire and retirees who are already drawing service pensions. You would just say, with respect to deaths that occurred before the date of termination. And it's interesting to see their conduct over time and how they treated this. For example, the 18th district plan… Mr. Merlone, let's take a step back a second because your time is going to be running out. Let's look at the law. Sure. And how do you get around the fact that ERISA, I think fairly clearly, defines a benefit in the event of death, among other things, as a welfare benefit? How do you get around that? Well, the definition of a pension plan provides some tension with that, Your Honor. The definition of a pension plan says that any plan that provides retirement income, regardless of the method of computing benefits or the method of distribution, is a pension plan. The IRS has put a gloss on that through regulations. Okay, let's just take a look. How does that… How does that cover it? Yeah. It says pension or pension plan means any plan, fund, or program, which heretofore, hereafter, established or maintained by employer or employee organization, or by both, to the extent that by expressed terms, the result of the circumstances provides retirement income to employees or results in a deferral of income. And then the IRS has put a gloss on that through its regulatory authority, which covers not just employees but their beneficiaries. And beyond that… What do you mean the IRS put it? What's the IRS say? Well, the IRS promulgated a regulation that said, a plan designed to provide benefits for employees or their beneficiaries to be paid upon retirement or over a period of years after retirement will be considered a pension plan if the employer contributions under the plan can be determined based on definitely determinable benefits. Now, that was a pre-ERISA regulation. It's Treasury Reg 1401-1B1I. But it was re-promulgated post-ERISA to apply to an ERISA plan under 1401A-1BI. But you've got a statute. Just back to Judge Fischer's point, and then I'll let him pick up over this. You've got definition of welfare benefit plan or welfare plan includes, among other things, benefits in the event of sickness, accident, disability, death. Right. Isn't this like a life insurance policy, a lump sum payable on the event of the death of the person involved? Let me address that first, and then I'll come to that. Understand that the definition of welfare benefit also excludes pensions payable upon death. That's one of the carve-outs that's built into the definition of welfare benefit under ERISA in Section 3.1. And one of the structural features of this statute when it was passed, one of the reforms that Congress sought to enact, was a requirement that every pension plan pay death benefits to spouses in the form of a joint and survivor annuity. Yeah, but there seem to be two different kind of death benefits. One is some residual money that otherwise would go to the employee who's now died, and the other is a lump sum like an insurance policy. My understanding was it's only the latter that is disputed in this lawsuit. That is correct, Your Honor. I'm just trying to address first the point that is every death benefit a welfare benefit? I don't think that that could be sustained under the statute given the structure. Maybe not when you use death benefit as loose terminology, but when we focus on the lump sum payable upon death, that seems to be totally different than deferred compensation or regular periodic retirement payment. It's not always paid as a lump sum. It was eligible for distribution installments. It was accrued on the 5,500s that were filed by the plan in conjunction with the service pension to which it was joined. It was directly related to the service pension, which under another IRS reg is an indication that it's not a type of ancillary benefit that a sponsor is free to pull out. In fact, when they broke up the Bell system and transferred assets, the actuaries concluded that funding for this death benefit had to be included in the funding for the transfer under that circumstance. We're not bound by what the actuaries thought or what somebody else said. We're bound by what the plan says and what ERISA says. I understand that, but, Your Honor, if you look at the overall totality of the circumstances, what you have is you have a sophisticated sponsor that knew a welfare plan when they saw it. When they had welfare benefits like disability benefits, they didn't pay them out of the pension trust fund. They didn't put them on the same 5,500 as the pension benefits. They created separate plan numbers for them. You're not arguing that somehow they're stopped by treatment along the way from saying now, as they do, that these were welfare benefits, not pension benefits by their very nature? We don't raise the claim of estoppel, but I think when somebody, when you look at the question of intent, if somebody treats something as a pension benefit for 40 years and then to suddenly say, oh, no, it's a welfare benefit, at a minimum I would think that that treatment over 40 years would be relevant to the question of an intent to vest the benefits since pension benefits normally vest. Mr. Malone, how can you distinguish this case from the Second Circuit's decision in Rombach v. Nestle? Rombach involved disability benefits, Your Honor. There's no question that disability benefits are a welfare benefit. Well, there was a question in that case. Well, that was only because the plaintiff hung his hat on the mere fact. They treated it as a pension benefit throughout the courts. They called it the word. They used the buzzword pension, and that was really what they did. Okay, but the Second Circuit said notwithstanding what they called it, we look at the law. That is true, but it was also on a summary judgment, not on a motion to dismiss. It also was involving the type of benefit, for example, that this sponsor clearly recognizes as a welfare benefit because they put it in a welfare benefit plan when they described the benefits in the SBD. They put a 500 label on it instead of an 00 label, as they would for a pension plan. They didn't report disability benefits on their 5500 for the defined benefit plan. So the disability is such a clear context of a welfare benefit, and it's indisputable,  carried forward under ERISA, and which was treated for 40 years by everybody as a defined benefit under this defined benefit pension plan. And the question is, did the sponsor have enough freedom to design its plan so that this benefit, payable at the time of death, admittedly, out of the corpus of its trust, could be deemed a defined benefit under ERISA? And I think it could. Thank you. You've been patient. Thank you.  Ms. Cusato. You better pull that mic down more than a tad. I bet you're right. Ms. Cusato, let me ask you a procedural question before you get started because I looked at this again this morning. I know there's some dispute whether or not your client should still be in this case, and you've asked us to substitute your client. I don't know that we've ruled on the motion to substitute your client, and there's no appeal from the action below where the district court refused to substitute your client. We did appeal. It's not before us. Yes, it is. It's an issue in our state. It's an issue in your brief. Right. The procedural question I have here is since this case has not yet been certified as a class action, do you have any procedural standing to be here before the fact of certification? I'm not sure it means other than what you want to say, and I know it's important. But procedurally, I just wonder whether or not your client is here. If the district court judge had ruled timely on the motion, he would have granted it as a matter of routine. So the fact that he says it's moot would seem on some issue a way of denying a person an appeal right, which would be inappropriate, actually. We did raise it as an issue on appeal. In our appeal, we appealed everything when we filed our notice of appeal, and I think at this point, since the court has already denied the motion to strike the briefs, we're here to argue the merits, and if you affirm, then it remains moot. If you send it back, then the district court can appropriately resolve it. Okay. All right. All right. Let me just jump right into some of the questions that seem to be of interest to the court, and I think that the three most important words in this case are the words defined benefit plan. In the SPDs that were issued in this case, they told the participants that this is a defined benefit plan. A defined benefit plan speaks volumes. This is a term of art in this industry. It's called a DB plan, and a DB plan is the Cadillac of pension plans. It gets the biggest current deductions for a benefit that it pays in the future, and it's subject to 401A of the code. It's subject to Title I of ERISA, which means it's a benefit that has to vest. It has to accrue. It has to meet the minimum funding standards. It has to file a Schedule B, and it has to be actually funded and accrued. But part of the question here is has it vested? Yeah. Well, it is our position that it hasn't been vested because if they called it a DB plan, that alone raises an allegation sufficient to not dismiss this case because they called it a DB plan, which has to, by law, vest. And then they put it on the Form 5500 in the Schedule B. Educate me here because it has to vest at a particular time. Doesn't it? I guess maybe the question is when it vests, but they're saying that it doesn't vest until such time as the person dies. Well, that's a misreading of even DB plans because you could say, oh, someone doesn't get their defined benefit service pension until they retire. You could add that same contingency to anything. That's the triggering event for payment. It doesn't tell you whether when the benefit, if it's vestible or not. What tells you whether the benefit is vestible or not is the status of the benefit. Isn't part of the point here something that Judge Fischer asked your co-counsel, which is, is this a welfare plan or a pension plan? Well, the thing is, the interesting thing is that determination is not made today. That determination was made 40 years ago because ERISA, Employee Benefit Plans, one side is ERISA, the other side is the tax code. And this court has said the actual and intended tax treatment guides in the determination of the plan. Now, if this is a defined benefit plan, it had to satisfy minimum funding. It had to file a Schedule B, and it had to select what it was. Was it pension? Was it welfare? Just like you and me, if we're filing a tax return, we have to know if we're filing jointly, we're a corporation, we're a partnership. They had to know that, and they had to know it back then. And all the evidence in this case shows that they were treating it as a defined benefit plan to maximize their defined benefit plan. But by treating it as a defined benefit plan, does that mean that they treated this death benefit as a pension as opposed to a welfare benefit? Absolutely. Because? Because if it's a defined benefit plan, by definition it's a pension benefit, but even more than a pension benefit. It's the Cadillac of pension benefits. It has to file a Schedule B, which shows how it's actually funded and accrued. And if you look, and we argued that and we showed it in the papers, the Schedule B here has tables showing how the accrual rates for the service pension and the death benefit together. I'm having trouble following your logic. You seem to be saying that or implying that a defined pension benefit plan can never have ancillary welfare benefits as well. That it's always excluded, categorically excluded. I'm not saying that. If you're not saying that, then the question becomes, well, why doesn't this plan contain both types of things? It does. In fact, they divided it up into three different plans. But they put the death benefit payable from pension trust, the service pension, and the deferred vested benefits were all put in the pension plan, which was plan 006 and plan 004. They put them all together and then they put those benefits on the 5500. They protected those benefits and the pension plan termination provision. They even said that this death benefit could be used for rollover and lump sum treatment. Can you imagine AT&T telling all these people that they could have rollover treatment and lump sum benefits from a welfare plan? Welfare benefit plans are not on the Schedule B. The point of the matter is that death is a triggering event for payment under pensions and retirement. So you can't just look at the triggering event to say what the character of the benefit is. This court has said in Ray Itt that you have to look at the intended and actual tax treatment. And if you study this plan, you will see that in every single plan document they are showing that this is a defined benefit plan and that it's readily accrued. They say it in the SPDs. They show it in the 5500s. What's a welfare benefit doing on a Schedule B? That it should not be on. It should not be given protection before a deferred vested benefit in the pension plan termination provision. Why don't we hear from Mr. Pope and then we'll get you both back on rebuttal. Okay. And then we'll go from there. Thank you. May it please the Court, my name is John Houston Pope. I represent all of the appellees. Maybe you can start with where Ms. Quesada left off, which is she's saying that this is a defined benefit plan and therefore it must be a pension benefit that's involved here, even if the statute talks about death benefits seemingly or on its face being under a welfare benefit. Before even ERISA, Your Honor, it was understood that ancillary benefits or ancillary, and I can never get that word right, benefits can be funded out of a pension trust. And that is exactly what's happened here. If you look at the plan itself, it tells you this is the death benefit plan within the pension plan. And that is a separate welfare plan. It has three components to it. It has a sickness death benefit. It has an accident death benefit. It has a pensioner death benefit. The pensioner death benefit is nothing more or less, Your Honor, than the sickness death benefit, which there's been no contention that's a pension benefit and nor could there be. It is nothing more than that sickness death benefit continued into retirement. As this Court said in the Unisys retiree medical benefit litigation, if all you're taking is a welfare benefit during employment and continuing it into retirement, that doesn't turn it into a pension benefit. That doesn't change its character. It continues to be a welfare benefit, and that is what you have here, a welfare benefit that started in employment and continues into retirement. If it was, as she said. How did it start in employment? It starts in employment as the sickness death benefit, and that is a death benefit that is paid to the survivors of active employees who died during their employment from a sickness-related cause as opposed to an accidental cause. It seems to me that that's a different benefit than a death benefit. A sickness death benefit would be a death benefit that would be paid upon death, but it recognized that the sickness was during employment. There's no sickness here. Well, it's not. Actually, it says in the plan itself, Judge Fischer, that this is the sickness death benefit paid to the survivors of retirees. That's the actual wording of the plan. The total amount shall not exceed the maximum amount which would have been paid as a sickness death benefit under the terms of Section 5.3 if the pensioner had died on his or her last day of active service before retirement on pension. It's essentially saying we will have a death benefit in retirement that will be the same as the sickness death benefit was before retirement. Okay. What about the tax treatment argument? The tax treatment argument is an enormous red herring in this case for a couple reasons. One is it wasn't properly raised below, and for that reason you don't have a proper record on that particular issue. It goes to whether or not the plan would continue to be qualified under the tax code if they had erroneously tax-treated this, and that issue wasn't raised below. If it would have, there would have been evidence introduced that the IRS and that the Department of Labor passed on this particular change and found no threat to qualification. That evidence wasn't put in because this argument wasn't raised below. So I think in that respect it should be excluded from your consideration. If you do decide to consider it, the tax treatment doesn't tell you anything more or less than what was being filled out on the tax form. It doesn't change the legal determination that you must make, which is what is the character of this benefit and how does that fit into the code. And we noted for you, for instance, cases from the Seventh Circuit and from other circuits, the fact that you might end up with a tax treatment that looks one way or the other doesn't answer your legal determination for you. In this instance, I don't even think it gets to what Ms. Quesada wants to make it out to be because you have to account for how you deal with the corpus of the trust, the tax authorities regardless, and the tax authorities allow you to use a portion of that for an ancillary benefit. So you say the tax treatment is irrelevant. It's irrelevant to the determination that you have to make, Your Honor. And what drives our determination as you understand the law? You have to look at the description of the benefit in the plan documents, the plan documents being the SPD and the plan itself. What is the nature and character of that benefit? Is it the nature and character of it that of a welfare benefit or of a pension benefit? And what does that turn on? The fact that it's lump sum? I believe that the fact that it's a lump sum benefit that is paid in the event of death and that characterizes it as welfare. It doesn't fit any of the definitions of what a pension benefit is. This doesn't defer income. This doesn't pay retirement income. I think it's a bit of sophistry to talk about the fact that there is an administrative convenience in this plan to allow it to be paid out over up to five years, to call that somehow it looks like a retirement income. That's nothing more than allowing the benefit to the beneficiaries who would have collected it to get the most favorable tax treatment that they could in accepting the payout of this because they may have already gotten other large income receipts in the first year or two of death from the estate and may wish to spread the money out rather than have it all impact in the highest marginal tax rate. Since it's a year of salary, why wouldn't it be a deferral of income? Because it's not a deferral.  It's not actually deferring a year of salary from somewhere out in the 30 years or 29 or however many years someone works for the company. That's just a measure that was put out there actually in 1964 as a convenience for how much would be paid. It's nothing more than that. And it says it's the greater of $500 or a year of salary. I submit to you that in 1964 there were more than a few people who came out better than $500. People who retired in 1985, such as plaintiffs, came out better in the one year of salary. Are there any cases in which a defined benefit plan had within it, as you say this one does, a separate section for a distinctly different type of benefit that fits the definition of a welfare benefit? I think both Rombach and Robinson in the Second Circuit, when they have a distinctly different benefit, which is the disability pension, what they call the disability pension, is within the pension plan itself being funded out of trust monies. And it is even described erroneously within it as being a pension benefit. And the courts agree you have to make the legal determination and find that it's a welfare benefit. On the vesting issue, why isn't this case controlled by New Valley? Well, New Valley doesn't provide for you the rules on how to interpret an ERISA plan, Your Honor, an ERISA plan that's within the regular standards. It is a top hat one. And this court has said that top hat plans are interpreted by different rules. We look to more of an integration and a closed area within standard ERISA plans. This shall be paid language that is the touchstone that the plaintiffs want to go with has to be read within the entire plan as a whole, which includes the reservation of rights clause. It even has to be read within its own context, which I think doesn't tell you that it shall be paid in all instances. It tells you it shall be paid in accordance with the following. Grammatically, it's telling you that when the benefit is paid, you have to follow one of these two rules. So I would go again up to what we pointed out to you, which is in the first clause of the pensioner death benefit section, which says the committee may in its discretion authorize a death benefit. The shall be paid doesn't tell you anything more than it's going to be paid in accordance with one, you know, the rule that if it's going to be paid, it has to be one of these two rules depending on when you retire. Mr. Malone made the point that his clients are what he would refer to as mandatory beneficiaries. Do you accept that distinction? Well, his clients aren't mandatory beneficiaries. He has one client who would have been a mandatory beneficiary under the old system. The rest of his clients are actually the people who are going to have to die before a benefit is paid. So they're not a beneficiary. They're the triggering event, as Ms. Quesada tells you. It doesn't make a difference to the interpretation in this instance, Your Honor. It seems to me, Mr. Pope, that if you're a loose AT&T, if you were an AT&T employee, if you were a loose employee and you looked at your pension plan and you examined all of the documentation in the plan, if you looked at the summary plan that were distributed, if you had access to the IRS forms that were filed, that you would conclude that you're receiving a certain amount during your lifetime and at your death your spouse or other eligible beneficiary was going to get this death benefit. I mean, there's nothing in there other than there's nothing that I would see in looking at that plan that draws into question at all your eligibility for that death benefit. And if you're planning for your estate, you're going to think, well, this is one less lump sum I'm going to have to cover to protect my family and life insurance. Now, why shouldn't this be treated as a defined benefit that you yourselves clearly defined? Why shouldn't it be? Your Honor, it's a welfare benefit. You have to make that legal determination. What tells us it's a welfare benefit? We know it's a welfare benefit because it's a lump sum paid upon death. Because of ERISA? Because of ERISA. Let me stop you there. When Congress enacted ERISA, who were they looking out for? They were balancing the interests of retirees who they wanted to protect and the companies who were offering benefits. Weren't they looking to protect the retirees and weren't they looking to protect the plans that were established by the companies? That was one of the important considerations that they were looking at, yes, Your Honor. And they were also looking to balance the rules. This is what the Supreme Court tells us. They were looking to balance the rules so that companies would continue to have incentives to offer benefits. It seems to me that you're bootstrapping your argument to support your plan based on language, based on a law that wasn't necessarily intended to benefit you, the employer. Well, Your Honor, it's not a benefit to the employer to be able to end a benefit. We're not being benefited. It's not like somebody took the money out of the plan and put it in a nuisance pocket. Well, it's money that you don't have to pay. It was money that they didn't have to pay at a time in which perhaps that contribution could have pushed them into bankruptcy and put other benefits into jeopardy, Your Honor. It might not be a pocket, but it certainly sounds to me like an account. It's not an account, Your Honor. There is a question on an ongoing basis as to whether or not you have to make contributions to a plan and whether or not that challenges the financial viability of a company, which could challenge ultimately other retiree benefits. And so there is decisions being made that balance a number of factors, Your Honor. But the fact is that Congress, when they implemented ERISA, at least this is what the Supreme Court tells us because we know it's a carefully drafted and reticulated statute that we are all supposed to be afraid to mess with. But what we've been told is that Congress was balancing the fact that it wanted to protect retirees and it wanted to protect employees against the company's need to have flexibility that was sufficient to provide incentives to maintain some level of benefits. They didn't want companies to go out the day after ERISA was passed and start terminating plans as quickly as they could because they didn't want to face the future of being locked into some benefits that would become extraordinarily expensive and that they couldn't deal with. So we know that piece of it, and there is a balancing that goes on. So I guess I don't want you to feel that we're trying to exploit ERISA. There's no exploitation of ERISA involved here. There is a welfare benefit, and while there may be some subjective expectations that you describe that you believe the retirees would have, those subjective expectations don't control whether or not it's a welfare or a pension benefit. It has to be a legal determination, Your Honor. It has to be looking at what the statute provides for us as to how we define what's a pension and what's a welfare benefit. This is a welfare benefit with a reservation of rights clause. You seem to be saying that the two categories are entirely mutually exclusive, that a benefit is either a pension benefit or it's a welfare benefit. And one way you know it's a welfare benefit is if it doesn't look like a pension benefit. It's not deferred income. It's not a monthly pension check. It doesn't have any earmark of a pension, right? That is one of the ways. Can a death benefit ever be a pension benefit? It can be if it is as I think it was Judge Michelle described that you can have one that is, I think your term was very good, it's the residual that the employee otherwise would receive. When a death benefit pays out that residual, it is a pension benefit. How is it set up in this particular plan then? In this particular plan, it's not paying out a residual of what an employee would have otherwise received. This particular death benefit that we are talking about is like a life insurance policy. It happens to be paid from a pension trust, but it's like a life insurance policy. Does the SPD somehow give the impression, however, that when you retire, this vests? No. There's nothing that says one way or the other what happens with it. It doesn't say that when you retire, this vests for your life. You have to understand, Your Honor, the notion of vesting is language that says essentially we're not going to take this away. It's not simply language that describes the benefit. That's a benefit description language. A benefit description language doesn't vest. That's not the clear and express language we look for for vesting. The clear and express language we look for is saying this is a benefit, we're not going to change. What if we were to hold that the language here is ambiguous? What would be the remedy? The remedy for ambiguity? Well, Your Honor, I don't think the language is ambiguous. I understand. I'm not conceding that. I give you that. I don't think that there's a sufficient question of fact to get you past the summary judgment that's already entered, even if there's an ambiguity. The Reservation Rights Clause resolves the ambiguity against the plaintiffs because it places within Lucent's hands the right to make the changes. Did the court grant a motion to dismiss or did the court grant summary judgment? I know you slipped that word summary judgment in your last response there. Because it is both, Your Honor. It was originally made as a motion for summary judgment at a time at which the plaintiffs were asking to substitute in a consolidated amended complaint adding this claim under Section 420 of the Internal Revenue Code. So the arrangement that was agreed in allowing them to put in the amended complaint, and I say agreed in the sense that this is what the judge decided to do, not what we agreed to do because we didn't want the new complaint. What the procedural posture that was followed was is that the consolidated amended complaint would be filed and we would move as a combination of a 12B6 and a summary judgment motion and bringing forward the summary judgment arguments with regard to all the claims that previously had been asserted and on which discovery had been conducted and summary judgment had already begun. And it would be a motion to dismiss as to this new claim on Section 420, which was really just a legal argument. So the judge is granting a motion to dismiss and a motion for summary judgment. Based on the reading of his opinion, he looked at the summary judgment materials, so I think we have to read it as Rule 56. But he said the defendant's motion to dismiss is granted. I understand that, Your Honor, and I think we have to read it a little bit more practically. He was looking at the materials that were in, and even if you just read it literally, I think that we would look at it from the point of view both sides put in all of their proofs. It would be a 12B6 motion converted to summary judgment by consent and practice. It does make a difference from our review, does it not? Well, ultimately it doesn't. It's not going to make a difference in this case, Your Honor. It can make a difference, but since a legal question is our most important one with regard to pension versus welfare benefits, it's a de novo review anyway. Summary judgment is de novo review anyway. The only question is would you look at materials outside the four corners of the complaint since both sides put in all their proofs and essentially consented to that being done because they understood that the notice for motion included Rule 56. It's not going to make a difference to Your Honors as to what your scope of review is because you get to look at that entire record and decide whether or not the judge below was correct as we would contend in granting the motion. Thank you very much, Mr. Cope. Mr. Malone? Let me start by talking about New Valley very quickly. New Valley is a top hat case. That's true. That only affects the scope of what the court can look at. In other words, outside of the top hat context, the statute provides a strong integration clause. The language that we're citing in New Valley when we talk about mandatory language, when we talk about a benefit that's tied to another retirement benefit as indicia of vesting, is based on a construction of the operative plan document in this case. So the fact that it was a top hat plan I don't think has any bearing on that aspect of New Valley's applicability here. The subject came up of who was this statute passed for. Congress told us who they passed this statute for. They passed it to retirees and also beneficiaries, which somehow got lost in the discussion earlier. And I think that's important because that's what we're talking about. We're talking about a deferral of income to be paid to beneficiaries of retirees from the corpus of a plan. Now, there's one nuance here that we haven't talked about, which is the real structure of this benefit. For most people it was going to be a year's salary, but there was a minimum set forth in the plan, and the minimum is a very interesting one. It's the annual amount of the pension allowance that you would receive as a service pension. So there is a direct relationship. As I said earlier, these two benefits are joined at the hip. To qualify to get this benefit, you had to meet the age and service requirements. It's a post-retirement benefit that only those who met the age and service requirements for a service pension would receive. And there's an IRS reg that's covered in some of the death benefit cases that we've talked about where benefits are directly related to. It comes up in the cash balance context. Most cash balance plans will provide that, although it's a defined benefit plan, if the employee dies, they can designate that their account balance or its actuarial equivalent can be distributed often in a lump sum. So again, there's a category of benefit payable on death that has historically been treated by every court that's looked at it as a pension benefit and not a welfare benefit. Thank you very much. Thank you. Ms. Cassano? Just quickly on the procedural matter, it's our position that the judge didn't rule 12b-6. He only referenced the allegations of the complaint and the documents that were in there, and he does have a reference to that on page 19 of his opinion. We had very limited discovery in this case, Your Honor. We got document discovery, no depositions of the actuaries or company officials who filed these Schedule Bs and these tax returns. That's not part of the appeal, right? There's no challenge to the limits on discovery that's been presented to us. Well, we were faced with a summary judgment motion, and we responded, Your Honor. We only got the discovery that we had at the time that the motion was made. What's the answer to my question of whether your appeal includes the challenge to the ruling that limited your discovery? We didn't make that application, Your Honor. As far as any confusion about what the benefit is that we're appealing, there were two types of benefits, death benefits paid from operating and death benefits paid from the pension trust. And if you look in the provisions that we're relying upon, that summary plan description, very clear, death benefits paid from the pension trust were treated as defined benefit plans. Death benefits paid for the pension trust were treated on the 5500 as pension, and they were on the Schedule B. Welfare benefits are not on Schedule B. They're not subject to 412. What about Mr. Pope's argument that it doesn't make any difference how you treat it, it's what the statute says? Well, the interesting thing is the statute said, ERISA 3002C refers to the tax code on certain Treasury regulations. They are 410, 411, and 412. 411 is vesting and accrual, 412 is funding. And if you look at the definition of funding under the 411 reg, it basically says accrued benefit is accrued benefit under the plan. So if the Treasury provisions trump ERISA, and it suggests to me that it does under that provision, if a Treasury is permitting this benefit to be accrued as a pension benefit, and every indication that they did, then that should in fact prevail. There is clearly more creativity under the code than there is under ERISA as far as the tax deductions and the treatment of these plans. And I think our brief shows that you are permitted to fund a small death benefit directly related, sort of like a little mini-me, that attaches to your pension benefit to maximize your pension deduction. AT&T were the best lawyers. They did a beautiful job. Everywhere you see the three benefits they call to be defined benefits, death benefits paid from pension trust, service benefits, and deferred vested benefits, got the same treatment throughout the document. Same treatment in the 5500. Same treatment in the pension plan and the pension plan termination provision. Those were the three that were rewarded first, and they put the death benefit paid from the pension trust in the middle. If it was a welfare benefit, what's it doing there? It's not supposed to be there. It shouldn't be on the Schedule B if it's a welfare benefit, and it certainly shouldn't get lump sum and rollover treatment. Thank you very much. I want to thank all counsel for very, very well presented briefs and oral argument. I would ask that you confer with the clerk's office and arrange to have a transcript prepared of this oral argument with the cost to be split evenly. Thanks. Thanks all. Take the matter under advisement. Call the next case. Numbers 06-4448 and 06-4464. Chandra Kant, B. Seton Hall University.  Thank you, Todd.